Oliver W. WHITE and Melvin Wynne

v.

Frank L. KING, Sr., Individually, and in his capacity as President of Dockloaders and Unloaders of Freight Cars and Barges, I. L. A. Local Union No. 854, A. F. of L.-C. I. O., Wallace Washington, Individually, and in his capacity as Vice-President of the Dockloaders and Unloaders of Freight Cars and Barges, I. L. A. Local Union No. 854, A. F. of L.-C. I. O., Larry Smith, Individually, and in his capacity as Secretary-Treasurer of Dockloaders and Unloaders of Freight Cars and Barges, I. L. A. Local Union No. 854, A. F. of L.-C. I. O., and W. J. Race, Individually, and in his capacity as Vice-President of the New Orleans Stevedoring Company [1].

Civ. A. No. 69-1425.

United States District Court,
E. D. Louisiana,
New Orleans District.

Oct. 12, 1970.

Supplemental Opinion Nov. 9, 1970.

[1]. Pursuant to stipulation of both parties dated October 7, 1970, I.L.A. Local No. 854 of the Dockloaders and Unloaders of Freight Cars and Barges, A. F. of L.-C. I. O., was properly joined as party defendant.

Margrett Ford, Ernest L. Jones, New Orleans, La., for plaintiffs.

Alvin B. Jones, New Orleans, La., for defendants.

HEEBE, District Judge:

This suit arose in the aftermath of the longshoremen's strike of 1968. On February 25, 1969, the members of Local 854 of the Dockloaders and Unloaders of Freight Cars and Barges I.L.A. voted on a proposed new contract settling the strike. Included in that vote was a proposal to raise union dues from two cents

an hour to six cents an hour by a check-off authorization plan. Both proposals were passed by standing vote of a majority of the membership. Plaintiffs Oliver W. White and Melvin Wynne, longshoremen in good standing, and members of the local, did not vote on these proposals and refused to pay the dues increase claiming that the vote was taken in violation of certain provisions of the Labor Management Reporting and Disclosure Procedure Act (hereafter LMRDA).[2] Plaintiffs' subsequent tender of dues in the pre-vote amount was refused as insufficient by defendant Larry Smith, Secretary-Treasurer of the local. Thereafter, defendants Frank L. King, Sr., and Wallace Washington, President and Vice President, respectively, of the local, issued a "knockout" directive to New Orleans Stevedoring Company ordering them to refuse employment to the plaintiffs. The stevedoring company complied with this directive and denied plaintiffs employment. ·

Plaintiffs then brought this suit against the defendants and the union for a declaratory judgment that the vote on the dues increase was invalid, for an injunction restraining the union from collecting the dues increase, and for damages suffered from the alleged illegal termination of employment. South Atlantic & Gulf Coast District, International Longshoremen's Association, intervened, seeking to uphold the legality of the voting procedure and dues assessment. Because of the necessity to the union in having an early determination of the question of the validity of their dues assessments, this Court will first address that question and reserve the issue of damages for future consideration.

■ Local 854 first challenges this Court's jurisdiction on the ground that the National Labor Relations Act, 29 U.S.C. § 151 et seq., preempted the cause of action. This Court, however, must agree with plaintiffs' contention that jurisdiction exists under § 412 of the LMRDA.[3] As was recently held in International Brotherhood of Boilermakers, etc. v. Braswell, 388 F.2d 193 (5th Cir. 1968), where an employee's illegal termination violates the LMRDA, the district courts have jurisdiction under § 412 to redress that violation even though the illegal termination is arguably subject to the NLRA.

Plaintiffs' main contention is that under § 411(a) (3) (A) of the LMRDA, any increase in dues not by a secret ballot is invalid.[4] Consequently, they seek to enjoin the union from collecting the four cents dues increase. Defendants, on the other hand, argue that no injunction should issue since plaintiffs have failed to show any prejudice resulting from the standing vote.

■ We are unable to perceive the basis of defendants' argument. Section 411(a) (3) (A) requires in clear and unmistakable language a secret ballot for any dues increase. A requirement of prejudice is nowhere mentioned. This section is part of a subchapter to the LMRDA entitled "Bill of Rights of Members of Labor Organizations." As a remedial statute, it is not to be read narrowly so as to derogate any of the rights granted by Congress to American working men. Where no requirement of prejudice exists, none should be read in. The requirement of a secret ballot is an absolute protection for the working man,

---

2. 29 U.S.C. § 401 et seq.

3. 29 U.S.C. § 412. "Any person whose rights secured by the provisions of [the LMRDA] have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

4. This subsection prohibits a dues increase by a local labor organization unless it is passed "(i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot."

and any vote that dispenses with it is invalid as repugnant to the statute. See King v. Randazzo, 346 F.2d 307 (2d Cir. 1965).

■ Intervenor, South Atlantic & Gulf Coast District, and defendants, point out that the two cents dues paid prior to the increase went to South Atlantic pursuant to its Constitution. In June 1968, at a regular convention in Brownsville, Texas, this amount was increased to three cents. Such increase, they argue, is binding on local union members through Article 8 of the Constitution of South Atlantic & Gulf Coast District, and § 411(a) (3) (B) does not require that an increase in dues of a national or district union be by secret ballot.[5] We must agree that § 411(a) (3) (B) does not require a secret ballot in all occasions but permits dues increases by majority vote at a regular convention as was done here. Ranes v. Office Employees Int'l Union, Local No. 28, 317 F.2d 915 (7th Cir. 1963).

Therefore, it is ordered, adjudged and decreed that of the four cents increase voted on by the members of Local 854 on February 25, 1969, the one cent due the intervenor, South Atlantic & Gulf Coast District, I.L.A., is valid and only the three cents earmarked for Local 854 is invalid. Accordingly,

It is the order of the court that defendants Local 854 of the Dockloaders and Unloaders of Freight Cars and Barges and their agents and employees, Frank L. King, Sr., President, Wallace Washington, Vice President, and Larry Smith, Secretary-Treasurer, and their successors and assigns, and all those acting in concert with, or under their direction, be, and the same are hereby, permanently enjoined from enforcing, by checkoff authorization or otherwise, the three cents of the dues increase earmarked for the local and approved by a standing vote of the membership on February 25, 1969.

It is the further order of this court that defendants Local 854 of the Dockloaders and Unloaders of Freight Cars and Barges and their agents and employees, Frank L. King, Sr., President, Wallace Washington, Vice President, and Larry Smith, Secretary-Treasurer, and their successors and assigns, and all those acting in concert with, or under their direction, be, and the same are hereby, permanently enjoined from denying plaintiffs Oliver W. White and Melvin Wynne their rights to work because of plaintiffs' failure and refusal to pay the invalid dues increase of February 25, 1969.

SUPPLEMENTAL OPINION

Plaintiffs Oliver W. White and Melvin Wynne brought this suit against defendants, Local 854 of the Dockloaders and Unloaders of Freight Cars and Barges and its officers, both individually and in their representative capacity.[1] Plaintiffs seek a declaratory judgment on the validity of a dues increase, an injunction restraining the union from collecting the increased dues and damages suffered from an alleged illegal termination of employment after plaintiffs refused to pay the increased dues. The South Atlantic and Gulf Coast District, International Longshoremen's Association intervened seeking to uphold the legality of the dues increase.

At trial, the evidence offered by both parties established that on February 25, 1969, the members of Local 854 voted on a proposed new contract settling the prolonged longshoremen's strike of 1968.

---

5. This subsection prohibits a dues increase except "in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice."

1. Pursuant to stipulation of both parties dated October 7, 1970. ILA Local 854 of the Dockloaders and Unloaders of Freight Cars and Barges, A. F. of L.-C. I. O., was properly joined as party defendant.

Included in the same vote was a proposal to raise union dues from two cents to six cents an hour. Both proposals were passed by a standing vote of the majority of the members. Plaintiffs, longshoremen in good standing, did not vote on these proposals and refused to pay the dues increase, claiming that the vote had been taken in violation of certain secret ballot provisions of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq., (hereafter LMRDA). Plaintiffs' subsequent tender of dues in the pre-vote amount was refused as insufficient by defendant Larry Smith, Secretary-Treasurer of the local. Thereafter, defendants Frank L. King, Sr., and Wallace Washington, respectively President and Vice-President of the local, issued a "knockout" directive to New Orleans Stevedoring Company, ordering them to refuse employment to plaintiffs. The stevedoring company complied and denied plaintiffs work.

Thirteen weeks later, pursuant to an agreement between parties whereby plaintiffs would pay the dues increase under protest, plaintiffs returned to their stevedoring jobs. White's average pay around this time was $120.00 a week; Wynne's average pay was $146.00. During this thirteen-week period, plaintiff White made reasonable efforts to secure other employment but was unsuccessful. Plaintiff Wynne made no such efforts.

Throughout this course of events and in taking these various actions regarding plaintiffs, the evidence showed and this Court finds that defendant officers were not actuated by malice but were instead attempting in good faith to discharge their duties under the local's by-laws and constitution.

These facts presented two issues to this Court: (1) was the dues increase

valid, and (2) if not, what damages were incurred by plaintiffs as a result of their illegal termination. Because of the union's necessity in getting an early declaration on the validity of their dues assessments, this Court first considered that question. In a prior opinion, see pp. 123–125, we held that this Court has jurisdiction over violations of the LMRDA and found the standing vote procedure a violation of § 411(a) (3) (A) of the Act.[2] An injunction was issued restraining any further collection of three cents of the dues increase.

■ Having found the dues increase invalid, it follows that the union's order to terminate plaintiffs' employment based solely on their refusal to pay the increase was illegal, and that the union is liable to plaintiffs in damages resulting from this illegal termination.

■ In their prayer, plaintiffs request lost wages and benefits, tort damages, attorney fees and such other relief as the Court feels just. Relief is prayed for against the union and against the officers individually. However, relief against union officials individually can only be predicated on a showing that those officials acted outside their official capacities. Gulickson v. Forest, 290 F.Supp. 457 (E.D.N.Y.1968); Nix v. Fulton Lodge No. 2, 262 F.Supp. 1000 (N.D.Ga.1967). Here, the proof showed that defendants acted within their official capacities and in a good faith effort to discharge their official duties. Thus, none of the defendant officials can be held individually liable for damages.

■ It is clearly settled that where a union unlawfully causes an employee's termination, it is liable to the employee for compensatory damages. International Brotherhood of Boilermakers v. Braswell, 388 F.2d 193 (5th Cir. 1968); Sim-

---

2. 29 U.S.C. § 411(a), (3). (A) prohibits a dues increase by a local labor organization unless it is passed "(i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reason-able notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot * * *."

mons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 (4th Cir. 1965). Here, the proof established that plaintiff White lost $1,560.00 in back wages and plaintiff Wynne lost $1,898.-00 in back wages. Defendant argues that plaintiff Wynne is not entitled to that amount since he failed to mitigate damages. While it is true that the evidence showed that Wynne made no attempt to find other employment, it is also true that defendants failed to offer any evidence on what amount of damages might have been mitigated or that other suitable work was available. Though there is some dispute in the case law, we think that the better rule is that adopted by the Fifth Circuit, which held that the employer has the burden of proving mitigation. NLRB v. Mooney Aircraft, Inc., 366 F.2d 809 (5th Cir. 1966); NLRB v. Miami Coca-Cola Bottling Co., 360 F.2d 569 (5th Cir. 1966); Florence Printing Co. v. NLRB, 376 F.2d 216 (4th Cir. 1967); NLRB v. Brown & Root, Inc., 311 F.2d 447 (8th Cir. 1963); *Contra,* NLRB v. Mastro Plastics Corp., 354 F.2d 170 (2d Cir. 1965). Defendant having failed to meet this burden, this Court will not speculate on the extent or possibility of mitigation and will award plaintiffs their full lost wages.

Plaintiffs also introduced some evidence on loss of pension and other benefits. We feel, however, that this evidence was insufficient to prove the value of these benefits. In absence of such proof, this Court will not speculate on their value, and accordingly must reject these claims.

Plaintiffs also claim tort damages for insecurity and suffering resulting from their loss of work. The cases are not clear on whether tort damages are recoverable for violation of the LMRDA. *E. g., compare* International Brotherhood of Boilermakers v. Rafferty, 348 F.2d 307 (9th Cir. 1965) (no damages recoverable for emotional distress) *with* Simmons v. Avisco, Local 713, Textile Workers Union, *supra,* (damages recoverable). Without deciding this issue, we must reject plaintiffs' claims since the evidence failed to establish that any such injuries were caused by the illegal termination.

Finally, plaintiffs seek their attorney fees in this matter. Since plaintiffs were represented by legal aid attorneys and incurred no legal fees, and since plaintiffs failed to introduce any evidence that an award would be contributed to Legal Aid, this Court, in its discretion, will make no such award. *See,* Gartner v. Soloner, 384 F.2d 348 (3rd Cir. 1967), cert. den. 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968), and cases discussed therein. Accordingly,

It is the order of the Court that judgment be entered as follows:

1—Judgment in favor of plaintiff, Oliver White, and against the defendant union only, Local 854, for the sum of $1,560.00, with legal interest thereon from date of judgment until paid;

2—Judgment in favor of plaintiff, Melvin Wynne, and against defendant union only, Local 854, for the sum of $1,898.00, with legal interest thereon from date of judgment until paid;

3—Judgment in favor of the plaintiffs, Oliver White and Melvin Wynne, and against defendant union only, Local 854, ordering the said Local 854 to return to plaintiffs, White and Wynne, all of the invalid three cents dues increase paid under protest by the plaintiffs;

4—Judgment in favor of the defendants, Frank L. King, Sr., individually and as President of Local 854, Wallace Washington, individually and as Vice-President of Local 854, and Larry Smith, individually and as Secretary-Treasurer of Local 854, and against the plaintiffs, Oliver W. White and Melvin Wynne, dismissing and denying plaintiffs' claim as against these three defendants; and

5—Judgment assessing all court costs of this proceeding against Local 854.