Norman H. BERG, Plaintiff,

v.

Vincent WATSON et al., Defendants.

No. 75 Civ. 1644 (JMC).

United States District Court,
S. D. New York.

July 8, 1976.

Joseph Friedberg, New York City, for plaintiff.

Markowitz & Glanstein, New York City (Robert C. Cohen and Richard H. Markowitz, New York City, of counsel), for defendants.

## OPINION AND ORDER

CANNELLA, District Judge.

[1] This action under Section 101(a)(5) of the Labor-Management Reporting and

Disclosure Act of 1959 ("LMRDA" or "Landrum-Griffin Act"), 29 U.S.C. § 411(a)(5), for injunctive and other appropriate relief is presently before the Court on the plaintiff's motion for summary judgment. In that plaintiff was not served with specific written notice of the charges against him he is granted partial summary judgment, solely on the issue of wrongful disciplinary action.[1]

## FACTS

Plaintiff is a member of defendant International Union of Elevator Constructors, Local No. 1 (hereinafter "Union," "Local No. 1" or simply "Local"), a labor organization representing elevator constructors and mechanics employed by various elevator contractors in the New York metropolitan area and with its principal place of business in New York City. The controversy which gives rise to this suit involves the circumstances surrounding disciplinary action taken against Berg by defendant Union, and the material facts are largely undisputed.

Some time prior to June 15, 1973, during the construction and installation of elevators at 737 Third Avenue (hereinafter "job-site"), certain switches were wired and cable installed in a starter station by a member of Local No. 3 of the International Brotherhood of Electrical Workers, AFL–CIO, when in fact this work was within the jurisdiction of defendant Local. This error was subsequently discovered and on June 15, 1973, in an effort to resolve the situation, Thomas McGoldrick, Business Agent of the Local, met with plaintiff, who was then employed by Haughton Elevator Company ("Haughton") as the mechanic in

charge at the job-site. Raymond Bender, the Shop Steward of Local No. 1, who was employed by Haughton as a mechanic, William Hughes, Haughton's Construction Superintendent, and Jack Anderson were also present. It seems that at that meeting McGoldrick instructed plaintiff to have the starter station rewired by a member of Local No. 1. Berg, while not contesting this, claims that he assigned the work to Bender and assumed, without checking, that it had been completed. In any event, in either September or October, McGoldrick and Bender returned to the job-site (although Bender had since been discharged by Haughton) and discovered that the station had not been rewired.

By letter dated November 2, 1973, McGoldrick filed charges alleging that Berg had violated Article XIV, Section 4 of the Constitution and By-laws of the International Union by refusing "to comply with an order given him by me in my capacity as a Business Agent" on or about June 15, 1973. In accordance with the constitutions and by-laws of the Local and International Unions the charges were referred to the Executive Board of the Local, which has the authority to try, hear and determine charges against a union member.

On January 4, 1971, the Executive Board mailed plaintiff a copy of McGoldrick's charges under a cover letter indicating that a hearing on the alleged violation would be held on February 7, 1974. A second such mailing occurred on January 21.[2] Plaintiff states that because of both the lapse of time between the incident and his receipt of the notice and the fact that he receives an

---

1. This action was instituted in the Supreme Court of the State of New York by plaintiff Norman H. Berg and removed to this Court pursuant to 28 U.S.C. § 1441. This Court is of the opinion that a state court has concurrent jurisdiction over claims brought pursuant to Section 102 of the Landrum-Griffin Act, 29 U.S.C. § 412. Thus, a federal court may entertain such an action which has been removed from state court, removal jurisdiction being derivative in nature. In this respect this Court is in disagreement with the conclusion reached in *Safe Workers' Organization, Chapter No. 2 v.*

*Ballinger,* 389 F.Supp. 903, 909–16 (S.D.Ohio 1974).

2. Although plaintiff's complaint alleges that he received written notice of the charges on January 7, 1974, and he so testified at his hearing before the Executive Board, his affidavit in support of the instant motion states that he first received such notice on January 25, 1974, after the Executive Board mailed its second notice. Determination of the issues presently before the Court does not depend upon resolution of this factual dispute.

average of six orders per month from the Business Agent and numerous other orders from the Job Superintendent and the Shop Steward, he was unable to recall the specific order.

Subsequent to receiving the notice, Berg attempted to learn the nature of the order in question from McGoldrick, who refused to divulge the sought-after information. Plaintiff was finally able to persuade Thomas Macchia, the Union Secretary, to reveal the specifics of the charges against him. Armed with this knowledge, Berg obtained a letter corroborating his version of the incident from William Hughes, who was present at the June 15 meeting.

At the hearing[3] on February 7 plaintiff attempted to have the charges dismissed due to their vague, general and unspecified nature and his consequent inability to prepare an adequate defense. Nevertheless the hearing proceeded[4] after which the Board found plaintiff guilty and levied a fine of $2,000 against him. Berg appealed this decision to the General Executive Board of the parent union, which affirmed the finding of guilt but reduced the fine imposed to $300.

However, Berg refused to pay the fine and on February 28, 1975, Macchia, in his capacity as Treasurer of defendant Union, wrote Berg requesting payment under the threat of loss of his status as a member in good standing of the Union. Undaunted, Berg continued to withhold payment of the fine and when he tendered his dues for the second quarter of 1975, they were rejected by the Local. Plaintiff brings this suit to preserve his status as a member in good standing of defendant Union.

*Relief Sought*

On this motion for summary judgment plaintiff seeks the following relief:

1. A declaration that the disciplinary proceedings are null and void;

2. An injunction restraining the defendants from interfering with or preventing plaintiff's free exercise of his rights and privileges as a member in good standing of defendant Union;

3. Compensatory damages in the amount of $50,000 plus expenditures;

4. Punitive damages in the sum of $100,-000;

5. Reasonable counsel fees in the sum of $10,000, together with costs and disbursements; and

6. Such other, further relief as to the Court may seem appropriate.

## DISCUSSION

The thrust of plaintiff's complaint is that the defendants violated his rights under the Landrum-Griffin Act[5] and the Constitution and By-laws of the International Union[6] by (1) failing to give him written specific notice of the charges against him, thus denying him an adequate opportunity to prepare his defense, and (2) fabricating false and spurious charges and convicting plaintiff thereon in a deliberate and concerted effort

---

3. McGoldrick, who is a member of the Executive Board, neither sat on the Board for the hearing nor participated in the deliberations, as he had personally submitted the charges. Bender, also a Board member, likewise neither sat on the Board nor participated in the deliberations as he was a witness to the events involved.

4. Berg's offer of the Hughes letter at the hearing was rejected by the Board.

5. Specifically Section 101(a)(5) of the Act, 29 U.S.C. § 411(a)(5), which provides:
   Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

6. Article XIX:

   .    .    .    .    .

   Sec. 3. All charges must be made in writing, stating with reasonable certainty what punishable offense . . . was committed, the facts of the offense charged and the time and place of the occurrence. . . .

**810**

to punish, intimidate and harass him, thus depriving him of a full and fair hearing.[7]

*Specific Written Charges*

■ Section 101(a)(5) of the Landrum-Griffin Act requires that a union member subject to discipline be "served with written specific charges." It is conceded by the defendants that the only written notice given to plaintiff of the charges against him was a letter, the text of which reads as follows:

Executive Board of
Local No. 1  I.U.E.C.
150 East 58 Street
New York, N.Y. 10022

Dear Brothers:

I, Thomas A. McGoldrick Card No. 1437–International No. 63492, do hereby charge Brother Norman Berg, Card No. 789–International No. 54545 with violation of Article No. XIV Section 4 of the International Constitution and By Laws. In that he violated his oath of obligation on or about June 15, 1973 in that he refused to comply with an order given him by me in my capacity as a Business Agent of this Local Union. I will call as witnesses:

Brother Raymond Bender    Card No. 1978
                                            International No. 64366

Brother J. Hurley           Card No. 1663
                                            International No. 63160

Fraternally,

Thomas A. McGoldrick
Business Agent
Local No. 1 I.U.E.C.[8]

In that this notice was not "specific enough to inform [Berg] of the offense he has allegedly committed,"[9] this Court concludes that it lacked the specificity required by the Act.

■ The degree of specificity required to meet the statutory standard will vary from case to case and clearly, the strict requirements of a criminal prosecution need not be complied with. *Eisman v. Joint Bd. of Amalgamated Clothing Workers*, 352 F.Supp. 429, 435 (D.Md.1972), *aff'd*, 496 F.2d 1313 (4th Cir. 1974) (per curiam); *Gleason v. Chain Service Restaurant*, 300 F.Supp. 1241, 1251 (S.D.N.Y.1969) (Herlands, J.), *aff'd*, 422 F.2d 342 (2d Cir. 1970) (per curiam); *Null v. Carpenters Dist. Council*, 239 F.Supp. 809 (S.D.Tex.1965). However, the notice must "be so drafted as to inform a member with reasonable particularity of the details of the charges." *Jacques v. Local 1418, International Longshoremen's Ass'n*, 246 F.Supp. 857, 860 (E.D.La.1965). *Accord, Eisman, supra; Gleason, supra; Magelssen v. Local 518, Operative Plasterers and Cement Masons*, 233 F.Supp. 459 (W.D.Mo.1964); *Vars v. International Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers (hereinafter "International Bhd. of Boilermakers")*, 215 F.Supp. 943, 947 (D.Conn.), *aff'd*, 320 F.2d 576 (2d Cir. 1963). At a minimum, the accused should be informed of the nature of the offense, the circumstances surrounding the alleged infraction and, as nearly as may reasonably be ascertained, the time and place of the occurrence. *Gleason, supra; Jacques*, 246 F.Supp. at 859–60.[10]

7. This Court has jurisdiction over the within action under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531, and particularly Section 412 thereof.

Plaintiff has duly sought and exhausted all those internal union remedies required prior to seeking redress in this Court.

8. Article XIV, Section 4 of the Constitution and By-laws of the International Constructors Union provides:

Every applicant for admission to membership shall take the following Oath of Obligation:
. . . I further pledge to obey all directives and orders of the International and the Local Union. . . .

9. Labor-Management Reform Legislation, Hearings before a Joint Subcommittee of the

House Committee on Education and Labor, 86th Cong., 1st Sess., pt. 5, p. 2285 (1959) (Senator McClellan), quoted in *Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 616, 28 L.Ed.2d 10 (1971).

10. *Compare International Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) (notice containing a detailed statement of the facts related to the fight that formed the basis for the disciplinary action sufficient under Section 101(a)(5) although a mere citation of the regulations allegedly violated would not be) *and Null, supra*, 239 F.Supp. at 815 (specifications charging job steward with not properly examining the credentials of a union member, thereby permitting

■ The notice in the instant case contained little more than a mere statement of the nature of the charges against Berg, to wit, that he failed to carry out an order of business Agent McGoldrick. (The Union constitutional provision involved was, of course, cited.) True, the approximate date of the order is included, but the passage of time between the alleged offense and Berg's receipt of the notice, when combined with the number of orders received by him, rendered this fact of little consequence. No reference whatsoever is made to the content of the order or to the place where the order was given, although this information was apparently within the knowledge of Berg's accusers and of the remainder of the Executive Board. It would have taken little effort for defendants to include this information in plaintiff's notice or provide it thereafter, yet they declined to do so, even after Berg had requested it.[11]

Defendants maintain that Berg was not prejudiced by any insufficiency of notice because at the hearing he was aware of the basis for the charges. However, the statute requires *written* notice "as a guaranty of fairness in the expulsion process." *Magelssen v. Local 518, Operative Plasterers and Cement Masons,* 233 F.Supp. 459, 461 (W.D. Mo.1964). Thus, "[a]n *ex post facto* showing that the accused had knowledge of the events surrounding the alleged offenses cannot cure the lack of adequate written notice made mandatory by the statute." *Gleason v. Chain Service Restaurant,* 300 F.Supp. 1241, 1253 (S.D.N.Y.1969), *aff'd,* 422 F.2d 342 (2d Cir. 1970) (per curiam); *Magelssen v. Operative Plasterers and Cement Masons, supra.*

In light of the foregoing, the Court concludes that the charges herein fail to meet the statutory standard and are thus fatally inadequate.[12] Accordingly, the action of defendant Union in levying a fine upon Berg is null and void. This holding is without prejudice to defendant Union's right to discipline plaintiff upon proper specification of the charges in accordance with the governing statutes and legal principles.

### Liability of the Individual Defendants

■ In addition to having the Union's disciplinary action declared null and void, plaintiff seeks to have the individual defendants' answer in damages for their deprivation of his rights under the LMRDA. In support thereof Berg states that, motivated by their personal animosity towards him, these defendants conspired together to try and convict the plaintiff on false and spurious charges, thereby depriving him of the right to a full and fair hearing guaranteed by the Act.[13]

that member to work while delinquent in dues and specifying the time and place of the alleged violation sufficient where accused had previously been informed of the nature of the investigation and given the name of the union member involved) *with Magelssen, supra,* 233 F.Supp. at 461 (the requirement of specific charges is not satisfied by mere citation to a section of the union constitution without any statement of the factual basis for the charge) *and Gleason, supra.*

11. Berg, just a few days prior to the hearing, was informed orally of the factual bases of the charges. However, independent discovery by an accused prior to the hearing of information needed to conduct a meaningful investigation and prepare a defense is an inadequate substitute for the statutorily required written notice. *See Magelssen v. Local No. 518, Operative Plasterers and Cement Masons,* 233 F.Supp. 459, 461 (W.D.Mo.1964). Nor can it be assumed that the accused is guilty and has knowledge of his derelictions, thus eliminating

his need to be informed of the factual bases for the charges. *Gleason v. Chain Service Restaurant,* 422 F.2d 342 (2d Cir. 1970) (per curiam); *Eisman v. Joint Bd. of Amalgamated Clothing Workers,* 352 F.Supp. 429, 435 (D.Md.1972), *aff'd,* 496 F.2d 1313 (4th Cir. 1974) (per curiam).

12. Having ruled that Berg was improperly fined by Local No. 1 because he was not provided with "written specific charges," the Court need not at this time address plaintiff's other contentions with respect to the disciplinary procedures.

13. It is established beyond peradventure that the right to a full and fair hearing includes trial by an unbiased and disinterested tribunal. *Tincher v. Piasecki,* 520 F.2d 851, 854 (7th Cir. 1975); *Kuebler v. Cleveland Lithographers Local 24–P,* 473 F.2d 359, 364 (6th Cir. 1973); *Falcone v. Dantinne,* 420 F.2d 1157, 1166 (3d Cir. 1969); *Parks v. International Bhd. of Elec. Workers,* 314 F.2d 886, 912 (4th Cir.), *cert.*

Although the LMRDA does not create a right to sue union officers for torts committed by them in their private capacities, it does provide for such a right where, acting under color of and in abuse of their authority as union officers, they violate the protected rights of union members. *Morrissey v. National Maritime Union,* 544 F.2d 19, at 24, No. 75–7457 (2d Cir. 1976); *Tomko v. Hilbert,* 288 F.2d 625 (3rd Cir. 1961); *Sipe v. Local 191, United Bhd. of Carpenters and Joiners,* 393 F.Supp. 865, 872 (M.D.Pa.1975); *Vincent v. Plumbers & Steamfitters Local 198,* 384 F.Supp. 1379, 1384 (M.D.La.1974); *Eisman v. Baltimore Regional Joint Bd. of Amalgamated Clothing Workers,* 352 F.Supp. 429, 437 (D.Md. 1972), *aff'd,* 496 F.2d 1313 (4th Cir. 1974) (per curiam); *White v. King,* 319 F.Supp. 122, 126 (E.D.La.1970); *Cole v. Hall,* 35 F.R.D. 4, 7 (E.D.N.Y.1964). On the other hand, when union officers act in a good faith effort to discharge their duties, they will not be held individually liable in damages. *White, supra* at 126; *Nix v. Fulton Lodge No. 2,* 262 F.Supp. 1000, 1008 (N.D. Ga.1967), *aff'd in part,* 415 F.2d 212 (5th Cir. 1969).

Without a detailed review of plaintiff's assertions regarding the motivations behind the individual defendants' actions in this matter, it can easily be seen that the question is fraught with contested issues of material fact. Despite plaintiff's protestations to the contrary, the mere fact that his accusers, two Executive Board members who disqualified themselves from participating in its deliberations, may have acted in retaliation to plaintiff's participation in proceedings which led to the discharge of defendant Bender from the employ of Haughton Elevator Company, or that the fine imposed by the Executive Board of

Local No. 1 was overly severe, does not necessarily mean that such acts either constituted an abuse of authority or were committed in bad faith. *See Gulickson v. Forest,* 290 F.Supp. 457, 468 (E.D.N.Y.1968) (Weinstein, J.); *Burke v. International Bhd. of Boilermakers,* 302 F.Supp. 1345, 1352–53 (N.D.Cal.1967), *aff'd,* 417 F.2d 1063 (9th Cir. 1969). At this juncture any such conclusion would be pure speculation.

Plaintiff having failed to demonstrate the absence of any triable issue of material fact, the motion for summary judgment on the issue of liability of the individual defendants is denied. *Camire v. United States,* 535 F.2d 749 (2d Cir. 1976); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975); *Judge v. City of Buffalo,* 524 F.2d 1321 (2d Cir. 1975).

## Attorney's Fees and Punitive Damages

The Supreme Court has established two separate criteria for the awarding of attorney's fees to a successful plaintiff in an action brought pursuant to 29 U.S.C. § 412. The first is bad faith on the part of the defendants. The second is whether a substantial benefit is conferred by the suit on the other members of the union. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).[14]

The Court can see no substantial benefit accruing to the other members of Local No. 1 from the instant suit, and indeed, none is advanced. Plaintiff rests his claim for attorney's fees on the bad faith of defendants' actions. As stated above, this issue is not susceptible of summary judgment.

Plaintiff also seeks to recover punitive damages. Although there is much controversy as to whether punitive damages

denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *Stein v. Mutuel Clerks Guild,* 384 F.Supp. 444, 447 (D.Mass.1974); *Kiepura v. Local 1091, United Steelworkers,* 358 F.Supp. 987, 990 (N.D.Ill.1973). Defendants contend that Berg has waived any claim with regard to his right to a full and fair hearing by his abandonment of that issue at the Executive Board hearing. However, after examining the minutes of that hearing, the Court finds no such

abandonment. Furthermore, it appears that even failure to raise the issue during the union proceedings would not constitute waiver of such a "vital safeguard as the guaranty of an impartial tribunal." *Falcone, supra* at 1162. *See Tincher, supra* at 855.

14. Of course, the award of counsel fees remains within the discretion of the district court.

are recoverable under LMRDA, *see, e. g., Cooke v. Orange Belt District Council of Painters No. 48,* 529 F.2d 815, 820 (9th Cir. 1976); *International Bhd. of Boilermakers v. Braswell,* 388 F.2d 193, 199–201 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968); *Sipe v. Local No. 191, United Bhd. of Carpenters and Joiners,* 393 F.Supp. 865, 871–72 (M.D.Pa.1975); *Magelssen v. Local No. 518, Operative Plasterers and Cement Masons,* 240 F.Supp. 259, 263 (W.D.Mo.1965); *Burris v. International Bhd. of Teamsters,* 224 F.Supp. 277, 280–81 (W.D.N.C.1963), the Second Circuit has recently adopted the view that they are, *Morrissey v. National Maritime Union,* 544 F.2d 19, at 24–25 (2d Cir. 1976). Accordingly, punitive damages will be awarded where actual malice or reckless indifference to the rights of the aggrieved union member have been displayed. *Morrissey, supra* at 25; *Cooke, supra; Braswell, supra; Woods v. Local No. 613, Int'l Bhd. of Elec. Workers,* 404 F.Supp. 110, 118 (N.D.Ga.1975); *Sipe, supra; Robins v. Schonfeld,* 326 F.Supp. 525, 531 (S.D.N.Y. 1971) (Levet, J.); *Sands v. Abelli,* 290 F.Supp. 677, 685 (S.D.N.Y.1968) (Cannella, J.); *Farowitz v. Associated Musicians of Greater New York, Local 802,* 241 F.Supp. 895, 905 (S.D.N.Y.1965) (Levet, J.). *See Hall v. Cole,* 412 U.S. 1, 3–4 n. 3, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Again, these are issues which are not susceptible of determination on a motion for summary judgment.[15]

### ORDER

Because plaintiff was fined by the defendant Union after presentation of charges which were insufficiently specific to meet the statutory standards, it is

ORDERED, that plaintiff's motion for summary judgment be, and hereby is, granted on the issue of wrongful disciplinary action. The action of the International Union of Elevator Constructors, Local No. 1, fining the plaintiff Norman Berg in

the amount of $300 is hereby declared to be null and void.

IT IS FURTHER ORDERED, that this case will be set down for trial on the following issues: (1) whether plaintiff suffered any injury which was the proximate result of his being wrongfully disciplined; (2) assessment of the amount of compensatory damages for any such injury; (3) whether Vincent Watson, Thomas McGoldrick and Ray Bender, acting under color of and in abuse of their respective union offices, caused the denial of plaintiff's LMRDA rights; (4) whether an award of attorney's fees is appropriate and the amount thereof; and (5) the assessment of punitive damages, if appropriate.

SO ORDERED.

---

15. In that the Court is able to determine the issues presently before it on purely federal grounds, no examination of any pendent state law claims is necessary at this time.