182 F.3d 1071 (9th Cir. 1999)
 E. JEAN JOHNSON, Plaintiff-Appellant,
v.
NATIONAL ASSOCIATION OF LETTER CARRIERS BRANCH 1100, and ALL INDIVIDUALS; NATIONAL ASSOCIATION OF LETTER CARRIERS AFL-CIO, Defendants-Appellees.
BASILIO FONTANA, Plaintiff-Appellant,
v.
Sixth Vice President; KIRK BAIZ, Seventh Vice President; RICHARD MISNER, Eighth Vice President; NORBERTA FULLEN, Secretary- Treasurer/HBR; BONNIE LIPPINCOTT, Chairman of the Board of Trustees; RICHARD FELDE, Trustee; BRUCE MacDUFFEE, Union Member; MICHAEL ROTCHER, Union Member; BARBARA STICKLER, Union Member, Defendants-Appellees.
 No. 97-55844 No. 97-55911
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 11, 1998--Pasadena, California
Filed July 2, 1999
 
 Christopher L. Diener, Newport Beach, California, for the plaintiffs-appellants.
 Richard J. Mathias, Curiale, Dellaverson, Hirschfeld, Kelly & Kraemer, Los Angeles, California, for defendant-appellee National Association of Letter Carriers Branch 1100 and individual defendants-appellees.
 Michael R. Feinberg, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, California, for defendant-appellee National Association of Letter Carriers.
 Appeals from the United States District Court for the Central District of California Consuelo B. Marshall, District Judge, Presiding.
 Before: Robert R. Beezer, Cynthia Holcomb Hall, and A. Wallace Tashima,
 Circuit Judges. Opinion by Judge Tashima
 TASHIMA, Circuit Judge:
 
 OPINION
 
 1
 Basilio Fontana and E. Jean Johnson appeal the district court's award of summary judgment to the National Association of Letter Carriers, Branch 1100 and certain individual members (collectively the "Branch"), and the National Association of Letter Carriers ("NALC"). Fontana and Johnson, the former president and former fourth vice-president of the Branch, respectively, sued the Branch and the NALC for violations of their free speech and procedural due process rights guaranteed by the NALC Constitution and section 101(a) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. S 411(a). We have jurisdiction pursuant to 28 U.S.C. S 1291, and we reverse and remand on the issue addressed in this opinion.[1]
 
 I.
 
 2
 The NALC is a national labor union that represents letter carriers employed by the United States Postal Service. The Branch is a local union affiliated with the NALC, representing letter carriers in Orange County, California.
 
 
 3
 In October 1992, Fontana and Johnson attended a NALC seminar in Las Vegas, Nevada. A Branch officer in attendance reported to other Branch officers that Fontana and Johnson had failed to attend classes at the seminar and had charged personal expenses on their union credit cards. Branch officers subsequently accused Fontana of misappropriating union funds. Political tensions within the Branch grew, and Fontana filed numerous charges against other officers for insubordination and violations of the Branch's by-laws. In February 1993, Branch officers brought charges of their own against Fontana. By May, the Branch membership had found Fontana guilty and removed him from the office of Branch president. Fontana retained his membership in the Branch.
 
 
 4
 On August 9 and 10, 1993, three Branch members filed additional charges against Fontana and Johnson. Richard Felde charged Fontana with misconduct based on his disrupting the Branch by repeatedly filing frivolous charges against other members, and Johnson with misconduct based on her aiding Fontana in filing these charges ("Felde charge"); Bruce MacDuffee charged them with breach of trust and perfidy based on their filing of frivolous charges and misuse of their positions of influence ("MacDuffee charge"); and Michael Rotcher charged them with misconduct and perfidy based on their filing frivolous charges, exceeding authority, subverting the will of the membership, and making politically motivated decisions ("Rotcher charge"). Committees were appointed to investigate these charges and present reports of their findings to the Branch membership.
 
 
 5
 On September 14, 1993, the Branch membership found Fontana and Johnson guilty of the Felde charge and suspended their membership. On October 7, 1993, the Branch membership found Fontana and Johnson guilty of the MacDuffee and Rotcher charges as well. Fontana and Johnson appealed these decisions to the NALC. On November 10, 1993, the NALC's Committee on Appeals reversed Fontana and Johnson's suspensions with respect to the Felde charge. Their suspensions remained in effect, however, because they had failed to pay union dues while their appeals were pending. There appears to be some dispute as to whether the Committee on Appeals ever responded to Fontana and Johnson's appeals of their suspensions with respect to the MacDuffee and Rotcher charges.
 
 
 6
 On May 10, 1994, Fontana brought suit in federal court against the Branch, individual members of the Branch, and the NALC. On June 6, 1994, Johnson brought a similar suit against the same defendants, in addition to a number of other individuals. Fontana and Johnson sued the defendants for violating their rights under numerous provisions of the United States Constitution, California law, the NALC Constitution, the LMRDA, and other federal laws.
 
 
 7
 The district court granted summary judgment in favor of all of the defendants. Johnson and Fontana appeal the grant of summary judgment with respect to their free speech and procedural due process claims arising under the NALC Constitution and the LMRDA. We consolidated their appeals.
 
 II.
 
 8
 We review the grant of summary judgment de novo. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998). In doing so, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See id.
 
 III.
 
 9
 Fontana and Johnson claim that the Felde, MacDuffee, and Rotcher charges violated their due process rights under the LMRDA because the charges failed to include any factual detail. The LMRDA requires that a union member subject to discipline be "served with written specific charges."[2] 29 U.S.C. S 411(a)(5)(A) (1999). Although mindful that "federal policy favors allowing a union to govern its own affairs," Wellman v. International Union of Operating Eng'rs , 812 F.2d 1204, 1205 (9th Cir. 1987), we agree with Fontana and Johnson, and conclude that the charges were too general to satisfy S 411(a)(5).
 
 
 10
 The Supreme Court has interpretedS 411(a)(5) to require that charges be " `specific enough to inform the accused member of the offense that he has allegedly committed.' " International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 245 (1971) (quoting LaborManagement Reform Legislation: Hearings Before a Joint Subcomm. of the House Comm. on Education and Labor, 86th Cong., 1st Sess., pt. 5, 2285 (1959) (statement of Senator McClellan)). Although case law suggests that a charge need not include the particular provision of a union constitution or by-law that has allegedly been violated, see Hardeman, 401 U.S. at 244 ("[A] union may discipline its members for offenses not proscribed by written rules at all . . . ."); Frye v. USW, 767 F.2d 1216, 1223 (7th Cir. 1985), Hardeman seems to require that the charge include some sort of statement of the facts:
 
 
 11
 [T]he transcript of the union hearing indicates that the notice did not confine itself to a mere statement or citation of the written regulations that Hardeman was said to have violated: the notice appears to have contained a detailed statement of the facts relating to [the incident] that formed the basis for the disciplinary action. Section [411(a)(5)] requires no more.
 
 
 12
 Hardeman, 401 U.S. at 245.
 
 
 13
 This circuit has addressed the issue of specificity once before.[3] In Bise v. IBEW Local 1969, 618 F.2d 1299 (9th Cir. 1979), nine union members brought suit pursuant to the LMRDA, alleging, among other things, that they were fined in violation of S 411(a)(5). See id. at 1302. We briefly addressed the plaintiffs' contention that the charges were not specific enough to satisfy S 411(a)(5), and found the argument to lack merit.[4] We wrote, "[w]e believe that the charges were specific enough to inform the plaintiffs, with reasonable particularity, of the details of the alleged violations." Id. at 1306 n.10; see also Berg v. Watson, 417 F. Supp. 806, 810 (S.D.N.Y. 1976) ("[T]he notice must `be so drafted as to inform a member with reasonable particularity of the details of the charges.' " (quoting Jacques v. Local 1418, ILA, 246 F. Supp. 857, 860 (E.D. La. 1965))).
 
 
 14
 The lesson that can be gleaned from Hardeman and Bise is that a union disciplinary charge must include a statement of the facts describing the incident on which the charge is based. The Seventh Circuit has also adopted such a rule:"[t]he written charges should contain `a detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action.' " Frye, 767 F.2d at 1222 (quoting Curtis v. IATSE, 687 F.2d 1024, 1027 (7th Cir. 1982) (quoting Hardeman, 401 U.S. at 245)) (alteration in original).
 
 
 15
 This is not to say, however, that we hold union members to the standards required of a practicing attorney by requiring a highly technical statement of the facts. For example, the required specificity does not rise to the level needed for a criminal indictment. See United States v. IBT, 19 F.3d 816, 823 (2d Cir. 1994); Curtis, 687 F.2d at 1027; cf. Wellman, 812 F.2d at 1205 (declining to require of disciplinary proceedings the same protections found in criminal proceedings because "a union has a significant interest in controlling internal discipline").[5] Instead, an informal written statement of facts suffices.
 
 
 16
 See Magelssen v. Local Union No. 518, Operative Plasterers' & Cement Masons' Int'l Ass'n, 233 F. Supp. 459, 461 (W.D. Mo. 1964) (noting that"[n]o technical formalities should be imposed . . . but some factual assertion, no matter how informal, is necessary to allow an accused member to prepare his defense"). The level of detail required is that needed to notify the accused of the incidents that form the basis of the charge so that he or she may prepare a defense.[6]
 
 
 17
 Applying these principles to the case before us, we conclude that the charges brought against Fontana and Johnson did not comply with S 411(a)(5). The charges mention abstract allegations, but fail to cite any specific examples. For example, the Rotcher charge against Fontana states in part:
 
 
 18
 You have exceeded your authority and acted without and contrary to the authorizations of the Executive Council and the membership. You have continually subverted the will of the membership and publicly claimed that you do not recognize its authority in Branch meetings. You have attempted to turn other members against the Branch through lies, misrepresentation of the facts, and political campaigning on so-called "station visits." You have made politically motivated decisions affecting the Branch to its detriment in retribution against those with whom you dis agree or perceive as political enemies.
 
 
 19
 Although these allegations make an overarching charge of misconduct, they lack any factual detail that would give Fontana notice of the specific actions he had to defend. For example, in preparing his defense, it would have been useful for Fontana to have known when certain events supposedly occurred, what lies or misrepresentations were allegedly made, or how Fontana acted contrary to the Executive Council's authorization. In the absence of any statement of the facts, Fontana could not be expected to present a defense, save for a general denial of any misconduct. The Rotcher charge's reference to the filing of frivolous charges, although a more specific allegation, also fails to include pertinent information such as against whom the charges were filed or approximately when.[7]
 
 
 20
 The MacDuffee charge against Fontana also fails to set forth any facts concerning its general allegations. For example, the MacDuffee charge states "[y]ou have used your position and influence, and you have made promises of Vice Presidential positions to members, in exchange for their support of your actions and to carry out your vendetta against the remaining elected Branch officers." MacDuffee does not mention to whom Fontana allegedly made promises, or how Fontana has misused his influence.[8]
 
 
 21
 Upon finding charges to be insufficiently specific, some courts require the disciplined member to "demonstrate that he was misled or otherwise prejudiced in the presentation of his defense" to establish a violation of S 411(a)(5). See, e.g., Frye, 767 F.2d at 1223; Waring v. ILA, Local 1414, 653 F. Supp. 374, 378-80 (S.D. Ga. 1987). But see Berg , 417 F. Supp. at 811 (noting that awareness of underlying facts independent of the charges themselves cannot cure inadequate written notice).[9] These courts derive their prejudice requirement from the Supreme Court's statement in Hardeman that S 411(a)(5) "empowers the federal courts to. . . determine whether the union member has been misled or otherwise prejudiced in the presentation of his defense." 401 U.S at 245. In Hardeman, the Court was presented with the issue of whether a court could interpret a union regulation for the purpose of determining whether an offense for which a union had disciplined a member was within the scope of the regulation. See id. at 242-43. In holding that courts may not do so, the Court remarked,
 
 
 22
 [t]hese charges must be, in Senator McClellan's words, "specific enough to inform the accused member of the offense that he has allegedly committed." Where, as here, the union's charges make reference to specific written provisions, [S 411(a)(5)(A)] obviously empowers the federal courts to examine those provisions and determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense. But it gives courts no war rant to scrutinize the union regulations in order to determine whether particular conduct may be punished at all.
 
 
 23
 Id. at 245 (footnote omitted) (emphasis added).
 
 
 24
 Fontana and Johnson do not allege with particularity how they were prejudiced; they merely state in their briefs that "[t]he failure to include any [factual detail] made it impossible for Appellant to prepare a response to the allegations." To the extent that prejudice is required under Hardeman, we conclude that the absence of any factual detail renders a charge inherently prejudicial. Without any mention of the facts underlying the charges, Fontana and Johnson could not have been expected to have alleged prejudice with any more specificity than to say that they could not adequately defend themselves because the charges were too general. We "cannot assume an accused is guilty, with knowledgeof his own dereliction." Gleason, 422 F.2d at 343.
 
 
 25
 In sum, we hold that S 411(a)(5) requires a written statement of facts sufficient to put the accused on notice of the conduct that he must defend. The Felde, Rotcher, and MacDuffee charges were not sufficiently specific because they failed to include any such statement of the facts. We further hold that, to the extent a showing of prejudice is required, an absence of factual detail is sufficiently egregious to render the charges inherently prejudicial. Therefore, we find that the district court erred in granting summary judgment to the Branch defendants on this claim.
 
 IV.
 
 26
 We reverse the district court's grant of summary judgment to the Branch only on the ground that the charges brought against Fontana and Johnson were insufficiently specific to comply with S 411(a)(5) of the LMRDA and remand for further proceedings consistent with this opinion. In our separate, unpublished disposition filed concurrently with this opinion, we affirm the district court's grant of summary judgment on all other grounds raised by Fontana and Johnson on appeal. Fontana, Johnson and the Branch shall each bear his, her or their own costs on appeal. The NALC shall recover its costs on appeal from Fontana and Johnson.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED
 
 
 
 Notes:
 
 
 [1]
 In this opinion, we discuss only the issue of the degree of specificity with which a charge must be made under the LMRDA. We address all other issues raised on this appeal in a separate, unpublished disposition, filed concurrently with this opinion.
 
 
 [2]
 No member of any labor organization may be . . . disciplined . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 29 U.S.C. S 411(a)(5) (1999).
 
 
 [3]
 The Branch argues that this circuit applies only a minimal standard to the assessment of specificity. The case cited by the Branch, and relied upon by the district court, however, goes to whether the provisions the accused is charged with violating are too vague -- not the charges themselves. See Perry v. Milk Drivers' & Dairy Employees' Union, 656 F.2d 536, 539 (9th Cir. 1981).
 
 
 [4]
 The Bise decision did not describe the disputed charges.
 
 
 [5]
 That is, a charge need not apply the underlying facts to the particular constitutional provision or by-law alleged to have been violated. See Curtis, 687 F.2d at 1027. Similarly, the charge does not need to allege facts sufficient to support the charge or the particular elements of the charge. Instead, the goal is to give the accused member notice of the conduct that he or she is expected to defend.
 
 
 [6]
 For example, in Gleason v. Chain Service Restaurant, 422 F.2d 342 (2d Cir. 1970), the plaintiff was charged with "collecting money `from members of the union' as dues and initiation fees and failing to turn it over to the union treasury." Id. at 343. The Second Circuit found the inclusion of rather general dates -- "the events `took place during 1965, 1966, and 1967' " -- and the companies whose employees were involved not to satisfy the specificity requirement. Id. The inclusion of allegations that "at least twice in 1965 Gleason did not turn over $30 initiation fees, and that on several occasions, no date specified, he retained the $10 dues," also did not provide sufficient detail. Id.
 Another example is Berg, in which the plaintiff was charged with failing to carry out an order given him by the union business agent on or about a particular day. See 417 F. Supp. at 808. The court found that including the date was insufficient in this case because the passage of time between the alleged offense and Berg's receipt of the notice, when combined with the number of orders received by him, rendered [the date] of little consequence. No reference whatsoever is made to the content of the order or to the place where the order was given, although this information was apparently within the knowledge of Berg's accusers .. . .
 Id. at 811.
 
 
 [7]
 The Rotcher charge against Johnson is very similar and suffers from the same defects. Lack of factual detail plagues the Felde charge with respect to both Fontana and Johnson as well. The Felde charge against Fontana states in full:
 This is a notification of charges against you done in accordance with Article 10 of the National Constitution of the NALC. I am hereby charging you with:
 Misconduct
 Over the past 9 months you have been a disruptive factor in the operation of Branch 1100. You have repeatedly and continue to file false and frivolous charges against members of Branch 1100. The time and resources of the Union have been wasted by your irrational and irresponsible conduct. It is obvious to me that you are not working in the memberships best interest and in fact are trying to destroy the union.
 I hereby propose that an assessment be imposed on you for all expenses incurred by the Branch because of your frivolous charges that you have repeatedly filed.
 
 
 [8]
 The MacDuffee charge against Johnson is virtually identical, and suffers from the same defects.
 
 
 [9]
 It is unclear whether this court has adopted a prejudice requirement. In Bise, we stated: "[w]e believe that the charges were specific enough to inform the plaintiffs, with reasonable particularity, of the details of the alleged violations. Moreover, there is no evidence in the record to indicate that the charging letters misled or compromised the defense of any plaintiff." 618 F.2d at 1306 n.10.